UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHARLES RAY JOHNSON,<br><br>      Plaintiff,<br><br> vs.<br><br>DAVE ERICKSON, Chief of Police for Brookings Police Department, JOE FISHBAUGHER, Assistant Chief of Police for Brookings Police, DAMIAN WEETS, Sargent for Brookings Police Department, JOHN MCQUISTION, Parole Officer, and JEFF POLEMAN, Police Officer for Brookings Police Department,<br><br>      Defendants. | 4:20-CV-04168-KES<br><br><br>ORDER GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Charles Ray Johnson, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court screened Johnson's complaint, dismissing it in part and directing service upon defendants in part. Docket 23. Both parties now move for summary judgment. Dockets 50, 57. Johnson also filed two motions to strike, and defendants move to declare Johnson a vexatious litigant and to dismiss this case as a result of Johnson committing fraud on the court. Dockets 66, 75, 76, 92.

I. **Factual Background**

When considering a motion for summary judgment, the court recites the facts in the light most favorable to the non-moving party. Under Local Civil

Rule 56.1(A), a party moving for summary judgment must present each material fact "in a separate numbered statement with an appropriate citation to the record in the case." A party opposing summary judgment "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1.B. "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1.D. Here, Johnson has filed a motion for summary judgment, but he has not filed a statement of material facts presenting each material fact in a separate numbered statement. Further, Johnson has not responded to each numbered paragraph in defendants' statement of material facts with a separately numbered response. All material facts in defendants' statement of material facts are deemed admitted, but this court will also recite Johnson's version of the facts.

The facts under defendants' statement of material facts are: that on June 26, 2018, Johnson was visiting Tiffany Wojahn, who he had just met on a dating app, in Brookings, South Dakota. Docket 59 ¶¶ 1-3. Johnson and Wojahn were talking in Wojahn's car when the Brookings Police Department received a call reporting suspicious activity involving "two individuals in a black car near the same address." *Id.* ¶¶ 11-12. Officers Damien Weets and

Geoffrey Pollman[1] responded to the call and approached the car. *See id.* ¶¶ 13-14. Weets requested identification from Johnson and Wojahn. *Id.* ¶ 18. While Wojahn offered a copy of her ID, Johnson told Weets that he did not have an ID on him. *Id.* ¶¶ 19, 21. Johnson then told Weets that his name was "Christopher Jones" and that his birth date was August 18, 1988. *Id.* ¶ 25. There was no Christopher Jones with an August 18, 1988, birthdate on file. *Id.* ¶ 30.

Weets asked Johnson if he had anything with his name on it to confirm his name and informed him that they could not leave until they could confirm his identification. *Id.* ¶¶ 31-32. After some more discussion, Pollman noticed that there was an ID in the pouch on the back of Johnson's phone. *See id.* ¶ 37. Johnson first said it was not his ID, but then handed it to Weets, who discovered that Johnson's name was actually "Charles Johnson." *Id.* ¶¶ 39-40. Weets then arrested Johnson for false impersonation. *Id.* ¶ 40. Neither Weets nor Pollman drew a firearm or made racial comments during the encounter, which is confirmed by their body camera videos. *Id.* ¶ 42; Docket 62-1; Docket 62-2. In an affidavit submitted by defendants, Wojahn agrees that neither officer drew a firearm or made racial comments. Docket 61 ¶¶ 25-28.

Johnson was on parole at the time of this arrest. Docket 59 ¶ 1. His parole agent at the time was John McQuistion. *See id.* ¶ 45. McQuistion contacted Johnson the day after his arrest and told him to return to Sioux Falls. *See id.* ¶ 51. He told Johnson that he was going to contact the Brookings

---

[1] Johnson names Jeff Poleman, Police Officer for Brookings Police Department, as a defendant in this case. The defendant's actual name is Geoffrey Pollman. The court will refer to the defendant by his actual name in this order.

Police Department and tell them to detain Johnson if Johnson did not leave Brookings within two hours. *Id.* ¶ 52. Four hours later, Brookings police officers found Johnson in Brookings where he had been arrested the previous night and detained him. *Id.* ¶¶ 57-58. McQuistion then drove to Brookings to bring Johnson back to Sioux Falls. *Id.* ¶ 58. Johnson had a positive urine sample for THC on June 28, 2018, and August 20, 2018. *Id.* ¶¶ 59, 61. He was late for three parole meetings in the four months following his arrest. *Id.* ¶¶ 60, 62-63.

When Johnson arrived an hour late to his parole meeting on October 12, 2018, McQuistion was with another parolee, and Johnson left without meeting with McQuistion. *Id.* ¶¶ 63-65. McQuistion then called Johnson and informed him he needed to return to the office by 2:00 p.m. *Id.* ¶ 66. Johnson refused and instead said he would report on October 15, 2018, at 8:00 a.m. *Id.* ¶ 67. Johnson also refused to report to the Glory House for a urine sample that evening. *Id.* ¶ 68. After Johnson failed to show up for the meeting on October 15 and refused contact attempts and parole meetings, McQuistion listed Johnson as an absconder, and a warrant was issued for his arrest on October 26, 2018. *Id.* ¶¶ 69, 72-75. Johnson was located on February 25, 2019. *Id.* ¶ 76. McQuistion met with Johnson the following day and served him with a violation report. *Id.* ¶ 77. Johnson stated that he would not talk to McQuistion because he was going to sue him. *Id.* ¶ 79. In an affidavit submitted by defendants, McQuistion notes that the violation report was drafted before Johnson threatened litigation. Docket 60 ¶ 37.

Johnson makes several allegations regarding the events in question. He claims that the body camera videos of Weets and Pollman were edited to conceal the events of that night. Docket 67 at 7-12. He alleges that two events in one body camera video are nine minutes apart, but the same events in the other video are nine minutes and three seconds apart, and he cites this as evidence that the videos were edited. *See id.* at 11. Johnson claims that Weets drew his firearm during the encounter, pointed it at him, and said that "I hate it when y'all do that #BLACKLIVESMATTER bull crap when we have y'all cornered." Docket 1 at 6-7. He also claims that Wojahn must be lying about that night because she was upset at how the encounter ended and because she fears retaliation from Brookings police. Docket 66 at 1. Johnson alleges that after he had informed McQuistion that he was going to file a lawsuit against him, McQuistion retaliated by filing a false report that he had absconded from parole. Docket 1 at 12.

Johnson, who is currently an inmate at the Sioux Falls Community Work Center, filed an affidavit of Leonard Shugars, a fellow Community Work Center inmate. *See* Docket 88; Docket 93 at 1. In this affidavit, Shugars claims that he was in Brookings to record a song with Johnson the night that Johnson was arrested. Docket 88 ¶ 2. He claims that he met with Johnson before Johnson's date with Wojahn and that he stayed in Brookings while Johnson met Wojahn. *See id.* ¶¶ 4-6. According to his affidavit, Shugars then witnessed Johnson's interactions with Weets and Pollman. *See id.* ¶¶ 13-15. Shugars claims that he

5

saw one of the officers draw his firearm and yell racial comments at Johnson. *See id.* ¶¶ 17, 21, 25-26.

In response to this affidavit, defendants filed a motion to dismiss, alleging that Johnson committed fraud on the court. Docket 92. Defendants argue that Shugars was incarcerated at the Community Work Center at the time when Johnson was arrested. Docket 93 at 2. According to South Dakota Department of Corrections records, Shugars was on work release the day of Johnson's arrest, but his release was limited to the Sioux Falls community. Docket 94 ¶ 5. Further, Shugars checked back into the Community Work Center at 7:05 p.m., and Johnson was arrested in Brookings at approximately 10:13 p.m. *Id.* ¶ 7; Docket 94-1; Docket 63-2 at 2. Thus, defendants argue that Shugars could not possibly have witnessed Johnson's arrest, that Shugars knowingly signed a false statement, and that Johnson knowingly filed this false statement. Docket 93 at 3.

Defendants also move to declare Johnson a vexatious litigant. Docket 75. Defendants note that Johnson has filed twenty-three civil lawsuits in this district since 2018, including nine lawsuits[2] regarding the facts alleged in this

---

[2] Defendants cite *Johnson v. McQuistion*, 4:19-CV-04105-RAL; *Johnson v. Brookings Police Dep't*, 4:18-CV-04166-RAL; *Johnson v. Weets*, 4:18-CV-04165-RAL; *Johnson v. McQuistion*, 4:18-CV-04164-RAL; *Johnson v. McQuistion*, 4:18-CV-04140-RAL; *Johnson v. Weets*, 4:18-CV-04100-RAL; *Johnson v. Brookings Police Dep't*; 4:18-CV-04099-RAL; *Johnson v. Brookings Police Dep't*; 4:18-CV-4098; and the present case. Docket 75 at 2-3. Although *Johnson v. McQuistion*, 4:19-CV-04105-RAL dealt with the revocation of Johnson's parole for failure to pay fees, fines, and restitution, the other eight cases, including this one, deal with the same facts. *See, e.g., Johnson v. Brookings Police Dep't*, 4:18-CV-04166-RAL, Docket 1 at 1, 3. It is also important to note that the other cases

case. *Id.* at 2-3. They also note that although Johnson was not a prisoner at the time he filed this lawsuit, he does have three strikes against him under 28 U.S.C. § 1915(g). *Id.* at 3.

## II. Defendants' Motion to Dismiss as a Result of Plaintiff Committing Fraud on the Court

Defendants' motion to dismiss alleges that Johnson knowingly filed a fraudulent affidavit when he submitted Shugars's affidavit to the court. Docket 92. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 5 L. Ed. 242 (1821)). "[A]lthough not easily defined, 'fraud on the court . . . can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense.' " *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991) (omission in original) (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 195 (8th Cir. 1976), *abrogated on other grounds by Briscoe v. County of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012)). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as . . . fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence." *Id.* (quoting *Pfizer, Inc.*, 53 F.2d at 195).

---

were not decided on the merits and were dismissed without prejudice. *See, e.g.*, *Johnson v. Brookings Police Dep't*, 4:18-CV-04166-RAL, Docket 7 at 4-8.

In *Chambers*, the United States Supreme Court recognized that federal courts have inherent discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." 501 U.S. at 44-45. These inherent powers exist outside the sanctioning provisions contained within the Federal Rules of Civil Procedure. *Id.* at 42-43. "[O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Id.* at 45 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). The *Chambers* Court concluded that because a district court has the power to dismiss a complaint on grounds of fraud, it has the power to impose a "less severe sanction" as well. *Id.* (citing *Roadway Express, Inc.*, 447 U.S. at 765) (describing a district court's inherent power to assess attorney's fees).

The court finds by clear and convincing evidence that Shugars's affidavit is a fraudulent document. This finding is based upon the Department of Corrections records and the body camera video supplied by defendants that contradict Shugars's affidavit. The court will not, however, dismiss Johnson's complaint for fraud on the court. Instead, the court will impose the "less severe sanction" of striking Shugars's fraudulent affidavit and will rule on both parties' summary judgment motions without considering Shugars's affidavit.

III.   **Johnson's Motions to Strike**

Johnson moves to strike Wojahn's affidavit and Weets's and McQuistion's affidavits, alleging that these affidavits were perjury. Dockets 66, 76.

Johnson alleges that Wojahn exhibited bias against him and lied in her affidavit. Docket 66 at 1. He alleges that because she is a frequent visitor to

8

Brookings County, she feared retaliation from Brookings Police. *Id.* Johnson alleges that Weets and Pollman were responding to a report of a suspicious individual, not a report of two suspicious individuals as they described in their police reports. Docket 77 at 1-2. He claims that the prosecutor at his sentencing stated that law enforcement responded to a report of a suspicious individual. *Id.* at 2; Docket 50-1 at 6. Based on this difference, Johnson claims that Weets and Pollman made false statements. Docket 77 at 2. Johnson also cites what he believes are discrepancies between the timestamps in the body camera videos and the times provided in Weets's and Pollman's police reports. *Id.* at 3-4. According to Johnson, McQuistion's affidavit claims that Johnson was arrested for absconding on February 25, 2019, and that "[McQuistion] served Johnson with the violation report [McQuistion] had previously drafted." *Id.* at 5 (quoting Docket 60 ¶ 33). Johnson cites to the violation report, which was signed by McQuistion on February 26, 2019. *Id.* (citing Docket 60-4 at 1-2). Johnson claims that this proves McQuistion lied when he said he had previously drafted the report. *Id.*

As stated above, striking fraudulent affidavits is an appropriate sanction when fraud has been committed on the court. But the court finds no evidence of fraud here. Under Federal Rule of Civil Procedure 56(c)(4), an affidavit supporting a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Johnson makes no showing that the affidavits in question fail to satisfy Rule 56(c)(4). Instead,

9

he makes arguments as to the credibility of the evidence provided, which is not an issue for this court to address in a motion to strike. Johnson's motions to strike are denied.

## IV. Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphases omitted).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250. While pro se prisoners are entitled to the benefit of liberal construction at the pleading stage, pro se prisoners are subject to the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

B. **Johnson's Retaliation Claims against McQuistion**

Johnson brings claims against McQuistion for retaliation in violation of his First Amendment rights. Docket 23 at 5. Defendants argue that

11

McQuistion's filing of a parole violation report was not retaliatory. Docket 58 at 21-24. To allege a First Amendment retaliation claim, Johnson must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at 876.

Here, Johnson claims that McQuistion filed a false parole violation report against him after he told McQuistion that he was filing a lawsuit. Docket 1 at 12. McQuistion listed Johnson as an absconder after Johnson missed multiple parole meetings. Docket 59 ¶¶ 63-67, 69, 72-74. Johnson could not be located for another four months. *Id.* ¶ 76. Further, McQuistion only learned about Johnson's intention to file a lawsuit after McQuistion's report was drafted. *See id.* ¶¶ 79-80. Because the alleged adverse action occurred before McQuistion learned of Johnson's intention to file a lawsuit, it could not have been motivated by Johnson's exercise of his constitutional rights. Defendants' motion for summary judgment on this claim is granted.

### C. Johnson's Fourth Amendment Unreasonable Seizure Claims

Johnson brings claims against Weets and Pollman for violating his Fourth Amendment right to be free from unreasonable seizure. Docket 23 at 7-

12

8. Defendants argue that Weets and Pollman did not violate Johnson's right to be free from unreasonable seizure because their actions were reasonable. Docket 58 at 12-15. Seizures that are brief are still within the scope of the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 16-20 (1968). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16. A seizure must be reasonable, and reasonableness will depend on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). An officer can detain someone briefly for questioning but cannot make an arrest without probable cause. *See Terry*, 392 U.S. at 26-27. Further, "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004).

      Here, Johnson claims that Weets and Pollman told him he was free to go, then kept asking him for his name and arrested him for false impersonation. *See* Docket 1 at 7-8. He also claims that Weets and Pollman had no reason to initially approach him because the Brookings Police Department received a call about a suspicious black Ford Taurus at the 400 block of 15th Street South, and he was in a black Chevrolet Impala a block east of that location. Docket 85 at 4; Docket 63-2 at 2. When he arrived at the 400 block of 15th Street South, Weets approached a woman who directed him towards the suspicious car. Docket 63-2 at 2. The black car he and Pollman encountered matched the

13

license plate description, although not the make and model, provided in the call. *See id.* at 2-3. At this point, Weets and Pollman had the reasonable suspicion necessary to approach the car and question its occupants.

Weets asked Johnson to identify himself, and Johnson provided the name "Christopher Jones." Docket 59 ¶¶ 18, 25. When there was no Christopher Jones in the system with the birthdate provided by Johnson, Weets continued to ask Johnson for identification and informed him that he could not leave until he provided his name. *Id.* ¶¶ 30-32. At this point, Weets and Pollman had reasonable suspicion that Johnson had given them a false name in violation of SDCL § 22-40-1, and they were justified in detaining him for further investigation. Then, Pollman spotted Johnson's ID, and Johnson handed the ID to Weets. *Id.* ¶¶ 37, 40. Upon confirming Johnson's true name, Weets and Pollman had probable cause to arrest Johnson for violation of SDCL § 22-40-1.

Johnson contends that Weets and Pollman violated his rights when they asked him for identification because he claims that asking for identification of all individuals involved in a *Terry* stop is unconstitutional. *See* Docket 43 at 2. But police officers can ask for identification without implicating the Fourth Amendment under *Hiibel*. Also, Johnson did not merely refuse to identify himself; he provided a false name in violation of SDCL § 22-40-1. Thus, Weets and Pollman did not violate Johnson's Fourth Amendment right to be free from unreasonable seizure, and defendants are entitled to summary judgment on this claim.

### D. Johnson's Fourth Amendment Excessive Force Claims

Johnson brings claims against Weets and Pollman for violating his Fourth Amendment right to be free from excessive force. Docket 23 at 8. Defendants argue that the alleged use of force, Weets's drawing a firearm and pointing it at Johnson, never occurred. Docket 58 at 15-18. The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he Fourth Amendment requires us to ask, from the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017) (quoting *Graham*, 490 U.S. at 397).

Johnson puts forth no evidence that the actions he alleges occurred. The police reports and the affidavits of Weets and Wojahn all deny that Weets drew his firearm. Docket 61 ¶¶ 27-28; Docket 63 ¶¶ 12-13; *see* Docket 63-2 at 2-3. Further, the body camera videos of both Weets and Pollman, which are continuous without cuts or jumps, do not show Weets drawing his firearm. *See* Dockets 62-1, 62-2. Johnson claims that the officer and witness reports were biased and that the body camera videos were edited, but he provides no evidence beyond his allegations. Mere allegations are not enough to create a genuine issue of material fact under *Mosley*. Thus, defendants are entitled to summary judgment on Johnson's Fourth Amendment excessive force claims.

### E. Johnson's Fourteenth Amendment Equal Protection Claims

Johnson brings claims against Weets and Pollman for violating his Fourth Amendment right to equal protection. Docket 23 at 9-10. Defendants argue that there is no evidence that Weets or Pollman were racially motivated or made race-based comments. Docket 58 at 18-19. "[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). A plaintiff must show that the officer exercised discretion to enforce the law on account of race, "which requires proof of both discriminatory effect and discriminatory purpose." *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

Again, Johnson puts forth no evidence that the actions he alleges occurred. He claims that Weets made a comment about Black Lives Matter before arresting him, but there is no reference to this comment in the police reports, Weets's affidavit, or Wojahn's affidavit, and the comment cannot be heard on either officer's body camera video. *See* Docket 61 ¶ 26; Docket 62-1; Docket 62-2; Docket 63 ¶ 11; Docket 63-2 at 2-3. Johnson's allegations that witnesses were biased and body camera videos were edited do not create a genuine issue of material fact without further evidence. Thus, defendants are entitled to summary judgment on Johnson's Fourteenth Amendment equal protection claims.

### F. Johnson's Failure to Train Claims

Johnson brings claims against Erickson and Fishbaugher for failing to properly train Brookings Police Department officers. Docket 23 at 6 n.1. Defendants argue that Erickson and Fishbaugher cannot be liable for failure to train officers because no constitutional violation occurred. Docket 58 at 20-21. "As [the Eighth Circuit has] held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (internal quotation omitted). Further, "the plaintiff must prove that the alleged failure to train 'actually caused' a constitutional deprivation." *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Parrish*, 594 F.3d at 1002). Erickson and Fishbaugher's alleged failure to train did not cause any violations because no constitutional violations occurred. Thus, defendants are entitled to summary judgment on Johnson's failure to train claims.

### G. Johnson's Claims Regarding Brookings Police Department Policies

Johnson brings claims against the Brookings Police Department defendants in their official capacities alleging that the Brookings Police Department has instituted unconstitutional policies. Docket 23 at 6. Defendants argue that the Brookings Police Department's policies are not unconstitutional and that no underlying constitutional violations occurred. Docket 58 at 20-21. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."

17

*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). A municipal government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Here, Johnson has not been deprived of a federal right. Thus, defendants are entitled to summary judgment on these claims.

V. **Defendants' Motion to Declare Plaintiff a Vexatious Litigant**

Defendants move to declare Johnson a vexatious litigant. Docket 75. Defendants argue that this lawsuit is "frivolous and entirely fabricated" and that Johnson's large number of federal filings over the past four years show that his lawsuits are intended to harass and annoy. *Id.* at 2. "Under 28 U.S.C. § 1651(a), this court has authority 'to enjoin litigants with lengthy histories of abuse from future filings or to impose such other restrictions pre-filing as may be necessary to thwart such abuse.'" *Noble v. Am. Nat'l Prop. & Cas. Ins. Co.*, 297 F. Supp. 3d 998, 1012 (D.S.D. 2018) (quoting *Lundahl v. Nar Inc.*, 434 F. Supp. 2d 855, 855-56 (D. Idaho 2006))." In the Eighth Circuit, "a district court may enjoin a plaintiff who filed frivolous and vexatious lawsuits from filing further actions without first obtaining leave of the district court." *Id.*

Johnson has filed many federal lawsuits in the past four years, including several regarding these facts. But his previous lawsuits against these defendants did not survive screening and were dismissed without prejudice. Thus, the court does not find it appropriate to enjoin Johnson at this time. But

18

Johnson is warned that future attempts to bring this lawsuit may result in pre-filing restrictions on his ability to bring suits in this court.

Thus, it is ORDERED:

1. That defendants' cross motion for summary judgment (Docket 57) is granted. Defendants are entitled to summary judgment in their favor on all claims.

2. That Johnson's motion for summary judgment (Docket 50) is denied.

3. That defendants' motion to declare plaintiff a vexatious litigant (Docket 75) is denied.

4. That defendants' motion to dismiss as a result of plaintiff committing fraud on the court (Docket 92) is denied as moot.

5. That Johnson's motions to strike (Dockets 66 & 76) are denied.

6. That Johnson's miscellaneous motions (Dockets 80, 84, 89) are denied as moot.

Dated March 11, 2022.

                BY THE COURT:

                /s/ *Karen E. Schreier*
                KAREN E. SCHREIER
                UNITED STATES DISTRICT JUDGE